## Jones v. City of Corbin et al.

(Decided February 5, 1929.)

J. J. TYE for appellant.

HIRAM H. OWENS for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

This is a proceeding under the Declaratory Judgment Law (Civil Code of Practice, sections 639a1-639a12) by a taxpayer against the city of Corbin, its mayor, and commissioners, to test the validity of a contract which the city proposes to make with the Skinner Engine Company. From a judgment upholding the contract, the taxpayer appeals.

The admitted facts are these: Corbin is a city of the third class and under the commission form of government. It owns and operates a light and water plant. The equipment is insufficient to meet the immediate and future demands of its citizens. On May 29, 1928, the commissioners passed Ordinance No. 1120, by which 15 per cent. of the revenue derived from its light and water plant was set aside and appropriated for the purpose of securing additional machinery. At the time this action was brought, there was about $7,000 in the fund, and the fund was accumulating at the rate of about $1,500 per month. Thereafter the commissioners passed a resolution authorizing the city to lease, with option to purchase, the necessary machinery and equipment, and to advertise for bids therefor in accordance with specifications prepared by the superintendent of the light and water plant. Among other provisions of the resolution was the following: "Said rental and said purchase, if made, shall be paid out of the fund set aside and provided by Ordinance No. 1120, and not otherwise."

It is now proposed to enter into a lease contract with the successful bidder. The material provisions of the contract are in substance as follows: The lease is for a

period of 24 months. The rental for the first month is $7,446, payable in cash. The rental for each of the succeeding 23 months is $1,062.50, payable monthly in advance. The rentals are to be paid ''out of the proceeds of the funds realized as provided by Ordinance 1120, and not otherwise.'' At the end of the lease the city is given the right to purchase the machinery on condition that all installments of rental have been paid. In case the lease is terminated otherwise than by purchase, the city is to turn the leased property over to the lessor in good condition, natural wear and tear excepted. Any failure by the city to pay any installment of rent for 30 days after the same has become due, or any failure fully to keep or perform any of its other obligations as lessee, is a ground of forfeiture, should the lessor so elect and give 15 days' notice prior to the date the forfeiture is to become effective. It is further conceded that, if the total sum to be expended for the lease of the equipment is to be treated as a present indebtedness, within the meaning of the Constitution, it, together with other existing indebtedness, will exceed the constitutional limits.

This is not a case where the obligation is payable at all events out of the general funds of the city. No tax can be levied to meet the obligation. It is simply a case where the rent is to be paid from revenue derived and to be derived from the light and water plant, and therefore only out of a special fund that will be increased materially by the use of the additional machinery. It is not a case where the general resources of the city will be depleted in case of default. The lessor is given no lien which he may enforce on the plant as a whole. The worst that may happen in case of default is that he may remove the machinery and retain the rentals already paid. But even the rentals are not payable out of the general funds of the city. They are a mere charge on a portion of the revenue derived from the light and water plant, and specifically set aside and appropriated for the purpose of acquiring the additional machinery. In the recent case of City of Bowling Green v. Kirby, 220 Ky. 839, 295 S. W. 1004, we held that bonds which were issued by a city for the purpose of enlarging and improving its water plant, and which were payable solely out of the revenue derived from the plant, and which could not be collected by an enforcement of a lien on the plant, were not debts, within the meaning of sections 157 and 158 of the Constitution. There is no difference in principle between the

676

two cases, and we are therefore of the opinion that the chancellor did not err in sustaining the validity of the contract.

Judgment affirmed. Whole court sitting.