W. S. BANKHEAD *et al.* v. SYLVESTER BAUGHMAN *et al.*

(No. 7868)

Submitted October 9, 1934. Decided October 30, 1934.

484

*Wysong & Wysong,* for appellants.
*Hoover & Hoover* and *W. T. Talbott,* for appellees.

MAXWELL, JUDGE:

This is an appeal from a decree of the circuit court of Webster County cancelling as voluntary and fraudulent two conveyances of the same parcel of real estate to Pearl Baughman, wife of Sylvester Baughman. An appeal was awarded the Baughmans.

The deed primarily under attack was made by Sylvester Baughman to his wife, Pearl, May 18, 1925. It conveyed a residence and lot designated as No. 8 of the Bennett Addition to the town of Webster Springs; said lot being described as forty-four feet in width and about three hundred and twelve feet in depth. Sylvester had acquired this property from H. Lee Hamrick and wife by conveyance of January 14, 1922.

The other deed under attack was made by H. Lee Hamrick and wife to Pearl Baughman June 6, 1927. It purported to convey to her the said lot No. 8, describing it as forty-five feet in width and of the above depth. It recites: "The purpose and intent of this deed is to correct the deed made by the parties of the first part hereto unto Sylvester A. Baughman, dated January 14, 1922, the said lot having a frontage of forty-five feet on said Bennett Avenue instead of forty-four feet as stated in said deed."

The plaintiffs, W. S. Bankhead and J. W. Baker, were indorsers on a note for $300.00 executed by Sylvester Baughman and Joseph A. Baker to Charles Gregory and E. P. Hollister August 20, 1928, payable four months after date. When the note matured, Joseph A. Baker was out of the state serving as a soldier in the United States Army. He is a son of the indorser, Baker. Judgment

was taken on the note by the payees against Baughman and the indorsers. The record does not disclose that any effort has been made to collect the note or any part thereof from Joseph A. Baker.

The indorsers paid the judgment and costs. Then they procured the indictment and prosecution of Baughman under section 23, chapter 145, Code 1923, for obtaining their indorsement of the note under an alleged false representation that he was then the owner of the real estate in Webster County. Baughman was twice tried under this indictment. The second trial resulted in his acquittal by the jury and his discharge by the court. While the jury was deliberating at the second trial, this chancery suit was instituted. The prosecuting attorney is of counsel for the plaintiffs herein.

The bill alleges that the said deed of Baughman to his wife, May 18, 1925, was a voluntary conveyance, and was made by Baughman with intent to hinder, delay and defraud his creditors—both existing and subsequent. Similar allegations are made with reference to the aforementioned deed of H. Lee Hamrick and wife to Pearl Baughman, June 6, 1927.

It is alleged in the bill that at the time of the said conveyance of 1925 by Baughman to his wife he was indebted to one Mary Ann Daugherty under an agreement which he had made with her in 1923, by the terms whereof he was to pay her $25.00 per month for seven years in consideration that she would not prefer a charge of bastardy against him on account of a child of which she had recently been delivered. On information and belief, it is alleged that a balance of $1,750.00 was due from Baughman to Mary Ann Daugherty under said contract. She was not made a party to the bill.

Bearing in mind that the debt against Baughman on which the plaintiffs base this suit did not come into existence for more than three years after he had conveyed the property to his wife, there would arise grave doubt whether the broad allegations of the bill that said conveyance was made by Baughman with intent to hinder, delay and defraud subsequent creditors, were sufficiently

specific to warrant equitable consideration had this feature of the bill.,been directly challenged. 2 Moore on Fraudulent Conveyances, page 855; 27 Corpus Juris, page 773; 1 Hogg's Equity Procedure, section 120; *Wood v. Johnson,* 102 W. Va. 484, 135 S. E. 606; *Vance Shoe Co.* v. *Haught,* 41 W. Va. 275, 23 S. E. 553.

The demurrer to the bill, incorporated in defendants' answer thereto, does not challenge the bill specifically on the ground of insufficiency of allegation of fraudulent intent on the part of Sylvester Baughman when he conveyed the property to his wife. Under our statute a trial court is not required to consider grounds of demurrer not specified. "All demurrers in civil cases shall be in writing and shall state specifically the grounds of demurrer relied on, and no grounds shall be considered other than those so stated, except by the court of its own accord * * *." Code 1931, 56-4-36. True, this statute was not effective when this suit was instituted, but it became effective while the suit was pending in the trial court. Inasmuch as the statute relates only to incidents of procedure, it became operative at its effective date as to suits and actions then pending. 59 Corpus Juris, page 1175; 25 Ruling Case Law 939; *Moore* v. *McNutt,* 41 W. Va. 695, 703, 24 S. E. 682.

So far as the record before us discloses, the said demurrer was never expressly overruled, but, of course, the court's final decree, September 16, 1933, adjudicating the controversy in favor of the plaintiffs, necessarily upheld the sufficiency of the bill and in effect overruled the demurrer thereto. Defendants seem not to have relied strongly on their demurrer to the bill else they would have urged the court expressly to rule thereon long before the cause reached the stage for final decree on the merits.

In this situation, having in mind that the case was fully developed on its merits and was disposed of by the chancellor on that basis, we are impressed that the ends of justice herein are the better met if we do not consider grounds of demurrer not developed in the course of the proceedings. It is always highly desirable that contro-

versies be considered on their merits. Such considera-
tion will be made here.

Several months after the institution of this suit, the
filing of the bill and the taking of some evidence by the
plaintiffs, the said Mary Ann Daugherty under her mar-
ital name of Mary Ann Clevenger, by leave of the court,
filed her petition in the cause. Counsel for the plaintiffs
are her counsel. She alleged that Baughman is the fath-
er of her illegitimate child born March 12, 1923, when
she was fifteen years of age; that in consideration of her
forbearance to proceed against him in bastardy, he
agreed with her, acting through her father, that he would
pay her the sum of $25.00 per month for eight years;
that he paid $25.00 of that amount and no more; and
that after said payment he absented himself from Web-
ster County so that he could not be required to pay sub-
sequent installments. She asserts a claim for $2,375.00
with interest on matured installments.

Baughman denies all material allegations of both the
bill and the petition. He disclaims paternity of the child,
but says that "being threatened with trouble," he agreed
to pay the girl $250.00 at the rate of $25.00 per month;
that he paid $25.00 and did not pay any more because
she relieved him of further payments when she "adopted
the child" to a family in Harrison County. This she de-
nies.

In the final decree, the circuit court found for the
plaintiffs in the full amount of the judgment which they
paid as indorsers on the $300.00 note aforesaid, and for
Mary Ann Clevenger in the sum of $225.00 with interest,
the decree reciting that the latter amount was "admitted
by the defendant". Baughman protests against this re-
cital because he says that he in nowise admits that he
has owed the petitioner anything subsequent to her re-
leasing him from his promises as aforesaid.

At the time that Baughman conveyed the property to
his wife in 1925, he owed no debts of any consequence
other than the Mary Ann Daugherty obligation. Such
other debts as he may have had were discharged by him.
As to the Daugherty obligation, the circumstances indi-

cate that he was not without basis for the belief that it had been released. More than two years elapsed after he had entered into the said agreement with the Daugherty girl and before he conveyed his property to his wife, during which period he was employed in coal mining principally in Harrison County and earned and saved a sum of several hundred dollars which was used by him and his wife for living expenses and in discharging indebtedness. No legal action was taken by the Daugherty girl either on the verbal agreement aforesaid, or in bastardy, or for non-support of the infant. Process against him in the hands of an officer could readily have been served. During the said two-year period, the title of the property stood in his name, and, of course, could have been subjected to her indebtedness against him. In this situation, he may very well have acted under the conviction that the petitioner no longer made any claim against him.

The record discloses no circumstances which indicate with any degree of probative force that Baughman conveyed his property to his wife with intent to defraud creditors, existent or future. The most that can be said of it is that it was a voluntary conveyance.

Code 1923, chapter 74, section 2, provided: "Every transfer or charge which is not upon consideration deemed valuable in law, shall be void as to creditors whose debts shall have been contracted at the time it was made; but shall not upon that account merely be void as to creditors whose debts shall have been contracted, or as to purchasers who shall have purchased after it was made; and though it be decreed to be void as to a prior creditor, because voluntary, it shall not for that cause be decreed to be void as to subsequent creditors or purchasers." (Code 1931, 40-1-3).

Clearly, by the terms of the statute, subsequent creditors may not complain of a conveyance merely because voluntary. In order that they may complain of a voluntary conveyance, it must be made to appear that such conveyance was made with intent on the part of the grantor to defraud his creditors.

"To obtain relief from the conveyance and charge their debts on the property, it was incumbent upon the subsequent creditors to establish actual fraud therein, but proof of intent, in the making of the deed, to defraud existing creditors vitiates it as to subsequent creditors. * * * It (Code 1923, chapter 74, section 2) deals only with purely voluntary transfers, gifts and conveyances, on the one hand, and, on the other, with preferences by insolvent debtors. It makes a merely voluntary conveyance, not a fraudulent one, nor one both voluntary and fraudulent, good as against subsequent creditors, and vitiates it only as to existing creditors. It says a voluntary conveyance shall not be void, merely because it is voluntary, as to creditors, or purchasers who shall have purchased after it was made. If, in addition to lack of consideration for the conveyance, there was intent on the part of the grantor to defraud his creditors, it is not merely voluntary. It is fraudulent as well as voluntary, and, therefore, falls under the condemnation of section 1, chapter 74, and is void as to all creditors, subsequent as well as existing, unless the grantee is a purchaser for value and without notice of the fraud." *Grocery Co.* v. *Chase,* 75 W. Va. 775, 84 S. E. 785.

Under application of these principles, the evidence fails to disclose a satisfactory basis for plaintiffs' bill. It must be dismissed at their cost. Their effort to find basis for their suit by bringing in the Daugherty matter avails them naught. Not only the stirring up of this claim under the circumstances, but the instituting of this suit at the very moment that the jury was deliberating on the indictment as aforesaid, with the prosecuting attorney as one of counsel for the plaintiffs, creates unfavorable background for this entire proceeding. Neither can we approve the action of one of counsel for the plaintiffs in testifying at length on behalf of his clients with reference to matters which arose prior to the institution of this suit, and continuing as counsel in the case after his testimony had been given. *Burkle* v. *Abraham,* 112 W. Va. 257, 262, 164 S. E. 150. See Canons of Professional Ethics, sec. 18, 98 W. Va. p. xlvi.

490

As to the Mary Ann Clevenger claim, we are of opinion that Baughman's admitted promise to pay her $250.00 must stand. She denies releasing him of his promise, but even if she had attempted to do so the attempt would have been ineffective because of her infancy; also, there is not the slightest showing of consideration to support such release. Having come into the case by petition praying that her claim be adjudicated and that the conveyances of the residence property to Pearl Baughman be set aside as voluntary and fraudulent, petitioner is entitled to relief on the bases, first, that Baughman's promise to her is valid, subsisting and antedated the conveyances, and, second, that the said conveyances were voluntary.

It follows that in so far as the trial chancellor's decree grants relief to the plaintiffs, the same must be reversed; and in so far as it grants relief to Mary Ann Clevenger, it will be affirmed. The plaintiffs will be required to pay one-half of all costs, and the defendant, Sylvester Baughman, one-half.

*Reversed in part; affirmed in part.*